UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:24CR489 MTS/SPM ) |
| SIDARTH "SID" CHAKRAVERTY, VICTOR ALSTON, and SHIJING "POPPY" CAO, | ) ) ) ) |
| Defendants. | ) ) |

### UNITED STATES' RESPONSE TO DEFENDANTS' MOTION TO DISMISS INDICTMENT FOR FAILURE TO STATE AN OFFENSE ON GROUNDS OF MATERIALITY

COMES NOW the United States of America, by and through the United States Attorney for the Eastern District of Missouri, Thomas C. Albus, and Assistant United States Attorney for said District, Hal Goldsmith, and for its Response to Defendants' Motion to Dismiss Indictment for Failure to State an Offense on Grounds of Materiality (ECF 162), states to this Honorable Court as follows:

Defendants set out to build two multi-family apartment complexes in the City of St. Louis. Attempting to qualify for substantial tax benefits, Defendants agreed to certain hiring goals involving minority-owned and woman-owned business enterprises (MBE/WBE). Rather than make a good faith effort to meet the program goals by hiring qualified companies or suing to challenge the constitutionality of the requirements, Defendants decided to lie, cheat, and steal: making materially false representations to receive millions of dollars in tax benefits. The grand jury indicted Defendants, finding that their misrepresentations were material. Now, Defendants ask this Court to set aside the grand jury's finding of materiality. This Court should deny the

motion for two independent reasons.  First, the Court cannot set aside the grand jury's findings by dismissing an indictment.  If Defendants seek to challenge the materiality of their misrepresentations, they must do so through the petite jury and/or through Rule 29.  Second, it is well settled that Defendants' challenge to the constitutionality of the City's program does not privilege them to lie, cheat, and steal.  Regardless of the constitutionality of the city program, Defendants may be prosecuted for their fraud.

**I.      Any challenge to the materiality of Defendant's misrepresentations is premature until after a trial on the merits.**

As an initial point, Defendant asks this Court to take judicial notice of dispositive facts in reviewing and granting Defendants' Motion to Dismiss, which Motion is based upon Defendants' claim that the false representations charged here were not "material."  This Court should refrain from doing so under long settled caselaw.  In support of their position, Defendants cite *United States v. McKee*, 68 F.4th 1100 (8th Cir. 2023).  However, the *McKee* Court simply relied upon an Eighth Circuit case that affirmed a civil case where the District Court took judicial notice of the lack of commercial shipping on Table Rock Lake.  *McKee*, 68 F.4th at 1109 (citing *Edwards v. Hurtel*, 717 F.2d 1294 (8th Cir. 1983)).  Use of such authority is misplaced here.  First, the *McKee* Court was not really taking judicial notice of new facts.  It was citing Eighth Circuit precedent that it believed governed a non-case-specific fact.  Second, the *Edwards* Court noted that the parties did not object to the factfinding.  Here, the United States is objecting to this Court engaging in any pre-trial factfinding regarding materiality, the basis of Defendants' Motion.  There are a number of cases that recognize and apply the contrary rule: Courts cannot engage in factfinding to resolve a motion to dismiss prior to trial.  *United States v. Turner*, 842 F.3d 602, 605 (8th Cir. 2016) ("Courts may not, however, make factual findings when an issue is 'inevitably bound up with evidence about the alleged offense itself.'"); *United States v. Baxter*, 127 F.4th 1097 (8th Cir.

2025) (district courts may "…make some factual findings so long as it states them on the record, but not when an issue is 'inevitably bound up with evidence about the alleged offense itself.'"); *United States v. Grubb*, 135 F.4th 604 (8th Cir. 2025) ("Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when 'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'"); *United States v. Loftin*, 134 F.4th 1007 (8th Cir. 2025). Defendants' instant claim as to materiality is "inevitably bound up with evidence about the alleged offense itself." Defendants are in essence attacking the sufficiency of the evidence of an element of the charged offenses. To the extent materiality is a fact-specific issue, this Court should defer ruling on it until after trial.

**II.     The questioned constitutionality of the City program does not allow Defendants to engage in fraud.**

As to the substantive argument raised in the instant Motion, Defendants, charged with engaging in a substantial years-long scheme to defraud the City of St. Louis and its development agency out of millions of dollars in tax revenues, now claim that the charges should be dismissed because the City's redevelopment program about which Defendants are alleged to have made their false representations is unconstitutional. Defendants raise the issue of constitutionality premised on their argument that the City program, which has participation goals for the hiring of minority and woman owned subcontractors on redevelopment projects seeking City tax incentives, violates the Equal Protection Clause. Thus, Defendants argue that their alleged false representations could not have met the wire fraud statute's requirement of materiality. The United States finds no need to address the question of the constitutionality of the City's development program, and based upon longstanding caselaw submits that Defendants' instant Motion should be denied.

The alleged facts and circumstances underlying these charges, as set forth in the Indictment, are straightforward. Defendants Alston and Chakraverty, brothers, owned and

3

operated a number of companies, and Defendant Cao served as their companies' in-house accountant (Indictment Paragraphs 1 and 2).  Defendants' companies built two multi-family apartment developments in the City of St. Louis, the Chelsea and the Soho, after which Defendants' companies owned, operated and managed those apartment complexes (Indictment Paragraph 1).  In order to reduce the costs of constructing those developments, increase the profit gained from owning and operating those developments, and ultimately to put more money into the Defendants' pockets as owners and operators, Defendants sought and obtained significant tax incentives from the City (Indictment Paragraph 6).   Prior to beginning construction on each of the developments, Defendants obtained Ordinances from the City's Board of Aldermen granting each of those developments the requested tax incentives, primarily in the form of multi-year tax abatements worth millions of dollars to Defendants and their companies (Indictment Paragraphs 12 and 23).   Pursuant to the City's Ordinances and the Redevelopment Agreements which Defendants executed, and as a direct result of Defendants' requests for tax incentives, Defendants' companies were required to make good faith efforts at meeting the City's goals as to the use of minority and woman owned subcontractors on those development projects (Indictment Paragraphs 12 and 23).  The St. Louis Development Corporation ("SLDC") was the City Agency charged with overseeing the development projects on behalf of the City, as well as monitoring Defendants' use of minority and woman owned subcontractors on the projects (Indictment Paragraph 5).  The Indictment charges Defendants with conspiring and engaging in a scheme to defraud the City and SLDC, by making false representations to obtain money in the form of tax incentives from the City and SLDC (Indictment Paragraphs 9, 10, and 38).  The scheme to defraud and obtain money involved Defendants' falsely inflating their actual use of minority and woman owned subcontractors on the two projects in reporting to SLDC to deceive SLDC into believing that

Defendants' companies had made good faith efforts at achieving the hiring goals (Indictment, Manner and Means, Paragraphs 11 – 35). As a result of their conspiracy and scheme to defraud, Defendants and their companies obtained substantial tax incentives in the form of exemptions from sales taxes due and owing the City on the cost of construction materials for both the Chelsea and the Soho, as well as a ten-year property tax abatement on the Chelsea (Indictment Paragraphs 22 and 35). Defendants' scheme was discovered prior to the City granting the requested tax abatement on the Soho (Indictment Paragraph 35).

It is important to note that, had Defendants and their companies not engaged in their scheme, and had not falsely represented to have made a good faith effort to meet the City's goals for hiring minority and woman owned subcontractors on both the Chelsea and Soho, Defendants and their companies would simply not have been approved by the City for the substantial tax incentives they sought. They would not have faced any other sanction or unfavorable consequence. This was always about Defendants wanting to lower their costs on their development projects to increase their profit, thereby putting more money into their pockets and into their companies' coffers. Through their conspiracy and scheme, Defendants obtained approximately $551,022.99 in sales tax exemption on materials purchased and used on the Chelsea construction, as well as ten-years of tax abatement on the Chelsea, valued at approximately $1,750.071.88 (Indictment Paragraph 22). Defendants obtained in excess of approximately $1,000,000 in sales tax exemption on materials purchased and used on the Soho construction and, but for their scheme having been discovered, would have obtained ten-years of tax abatement on the Soho, valued at approximately $7,037,714.00 (Indictment Paragraphs 23 and 35).

Defendants support their argument as to materiality by citing at length Justice Thomas's concurrence in *Kousisis v. United States*, 145 S. Ct. 1382, 1401-1405 (2025) (Thomas, J.,

concurring). The Kousisis Court, in affirming appellant's convictions for defrauding Pennsylvania Department of Transportation's Disadvantaged Business Enterprise program ("DBE") and rejecting appellant's argument as to the purported necessity of an economic loss under the wire fraud statute, did not take up the issue of materiality, as it was not raised on appeal. Justice Thomas, in his concurrence, voiced his skepticism that the DBE program requirement could be material given its unconstitutional nature. *Id*. at 1404. Justice Thomas opined that, "… had petitioners [raised the issue of the DBE program's constitutionality], they *might* have been able to rely on the DBE provisions' unconstitutionality to support an argument that the provisions were not 'material' to their contracts." *Id*. at 1404, n. 3 (emphasis added).[1]

More applicable here, Justice Sotomayor, in her concurrence in *Kousisis*, stated:

> Petitioners would have had similar trouble contesting materiality on the ground that, at some point in the future, the DBE statutory scheme might be deemed unconstitutional. Indeed, petitioners at no pertinent time raised a challenge to the DBE program's constitutionality, and the DBE statutory scheme remains good law (as it was at the time of petitioner's conviction). It goes without saying that the law should not provide a shield from criminal liability based upon personal and unspoken predictions of a law's constitutionality.

*Id*. at 1414-15. That is, of course, the precise situation Defendants find themselves in the instant case. Instead of challenging the legality of the City's MBE/WBE program, they engaged in a lengthy fraudulent scheme to falsely claim compliance with the program to reap the substantial financial benefits for themselves and their companies. As Justice Thomas pointed out, the longstanding rule has been that "[a] claim of unconstitutionality will not 'excuse a voluntary,

---

[1] Unlike the Redevelopment Agreements in this case that were solely targeted at increasing MBE/WBE participation, the *Kousisis* agreements were for contracted work to paint state-owned bridges. The initial focus of Justice Thomas's materiality argument was that minority hiring was not the "fundamental" part of the agreement or the "essence" of the contract. *Kousisis*, 145 S. Ct. at 1402 (Thomas, J., concurring). Those arguments clearly do not apply to Defendants' agreements with the SLDC.

6

deliberate and calculated course of fraud and deceit,'" *Id*. at 1410, n.3 (citing *Dennis v. United States*, 86 S. Ct. 1840 (1966)). The pending Indictment charges these Defendants with just that, the voluntary, deliberate and calculated course of fraud and deceit.

The Court in *Dennis* made clear that "[w]hen one undertakes to cheat the Government or to mislead its officers, or those acting under its authority, by false statements, he has no standing to assert that the operations of the Government in which the effort to cheat or mislead is made are without constitutional sanction." 86 S. Ct. at 1847 (citing *Kay v. United States*, 58 S. Ct. 468 (1938)).

> The governing principle is that a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit. One who elects such a course as a means of self-help may not escape the consequences by urging that his conduct be excused because the statute which he sought to evade is unconstitutional.

*Id*. While a "governmental function…is not immune to judicial challenge…it may not be circumvented by a course of fraud and falsehood, with the constitutional attack being held for use only if the conspirators are discovered." *Id*. at 1848.

> Petitioners are in no position to attack the constitutionality of [the statute]. They were indicted for an alleged conspiracy, cynical and fraudulent, to circumvent the statute. Whatever might be the result where the constitutionality of a statute is challenged by those who of necessity violate its provisions and seek relief in the courts is not relevant here. This is not such a case. The indictment here alleges an effort to circumvent the law and not to challenge it—a purported compliance with the statute designed to avoid the courts, not to invoke their jurisdiction.

*Id*. at 1846.

> Ample opportunities exist in this country to seek and obtain judicial protection. There is no reason for this Court to consider the constitutionality of a statute at the behest of petitioners who have been indicted for conspiracy by

7

> means of falsehood and deceit to circumvent the law
> which they now seek to challenge.  This is the teaching
> of the cases.

*Id*. at 1847.

In *United States v. Kapp*, 58 S. Ct. 182 (1937), petitioners were convicted under the False Claims Act of conspiring and engaging in a scheme to defraud the government to secure financial benefits under the Agricultural Adjustment Act.  The Court found that, whether or not the Agricultural Adjustment Act was found to be unconstitutional, petitioners were indicted for violating the False Claims Act, "the statute protecting the United States against frauds." 58 S. Ct. at 184.

> It is cheating the government at which the statute aims
> and Congress was entitled to protect the government
> against those who would swindle it regardless of questions
> of constitutional authority as to the operations that the
> government is conducting.  Such questions cannot be
> raised by those who make false claims against the
> government.

*Id*. *United States v. Knox*, 90 S. Ct. 363, 365 (1969) ("…one who furnishes false information to the Government in feigned compliance with a statutory requirement cannot defend against prosecution for his fraud by challenging the validity of the requirement itself). *Bryson v. United States*, 90 S. Ct. 355, 360 (1969) ("But after *Dennis* it cannot be thought that as a general principle of our law a citizen has a privilege to answer fraudulently a question that the Government should not have asked.").

The Indictment charges these Defendants with conspiracy to commit wire fraud, in violation of Title 18, U.S.C., Section 1349, as well as multiple counts of aiding and abetting wire fraud, in violation of Title 18, U.S.C., Sections 2 and 1343.  There is no issue as to the constitutionality of those statutes, and Defendants have not raised such an issue.  As set forth and

held in the above-cited cases, the constitutionality of the City's Ordinances regarding the MBE/WBE program is not an issue for this Court to determine here, and the United States does not address it. Defendants should not now be heard to contest the materiality of their false and fraudulent representations based upon an argument that at some future date the City's MBE/WBE statutory scheme might be deemed unconstitutional.

WHEREFORE, the United States of America respectfully requests this Honorable Court overrule and deny Defendant's instant Motion to Dismiss, and for such other relief as this Court deems appropriate and proper under the circumstances.

>Respectfully submitted,
>THOMAS C. ALBUS
>United States Attorney
>
>*s/Hal Goldsmith*
>HAL GOLDSMITH, #32984MO
>Assistant United States Attorney
>111 S. 10th Street, 20th Floor
>St. Louis, Missouri  63102

## CERTIFICATE OF SERVICE

I certify that on August 4, 2025, a copy of the foregoing was filed in the ECF system.

>*s/Hal Goldsmith*
>HAL GOLDSMITH, #32984MO